WILLIAM A. STRASSER et ux.

*v.*

CITY OF NASHVILLE et al.

(*Nashville,* December Term, 1959.)

Opinion filed May 4, 1960.

JOSEPH MARTIN, JR., CARMACK COCHRAN, Nashville, MARTIN & COCHRAN, Nashville, of counsel, for appellants.

FRANK KING, JR., Assistant City Attorney, Nashville, for City of Nashville and others.

JAMES M. GLASGOW, Assistant Attorney General, NEILL S. BROWN, Special Counsel, Nashville, for D. W. Moulton, Commissioner.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Through the instrumentality of a bill filed under the declaratory judgment law, Mr. and Mrs. Strasser seek

to enjoin further proceedings in the Circuit Court for the condemnation by the Tennessee Department of Highways and Public Works of part of their farm for use in the construction of a State and Federal Highway. This bill makes the City of Nashville, certain of its officials and its Airport Commission, party defendants, and therein alleges certain damages due now, or hereafter, from the City or its Airport Commission, as well as certain damages to which it is entitled from the Highway Department for the proposed taking of this land.

The purpose of the bill is to transfer the proceedings in the condemnation case to the Chancery Court, and there to have adjudged the damages, and amount, to which Mr. and Mrs. Strasser think they are entitled from the City as well as the State. They state that their suit is unique, and without precedent either for or against its successful prosecution. Its justification is rested upon the theory that otherwise their property will be taken without due process of law, since, in their opinion, they are without adequate remedy at law.

The Chancellor sustained defendants' motion to dismiss the bill with the statement that, in his opinion, complainants have an adequate remedy at law in the Circuit Court condemnation proceedings as to every question raised against the Commissioner of Highways in the Chancery bill; further, "if the complainants have been damaged by the City of Nashville, they have the right to sue the said City in the Circuit Court". The case comes to this Court upon the appeal of Mr. and Mrs. Strasser from that decree.

The Highway Commissioner instituted the Circuit Court condemnation proceedings under the eminent do-

main statute enacted by Chapter 216 of the Public Acts of 1959. It is codified in the T.C.A. Code Supplement commencing with Section 23-1528. Mr. and Mrs. Strasser attack the constitutionality of that Act upon several grounds. That same attack upon this Act was made in the recent case of *Catlett v. State, etc.,* Jefferson Law 207 Tenn. 1, 336 S.W.2d 8. In an opinion of this Court this day announced by Mr. Justice Burnett the contstitutionality of that Act is upheld with certain elisions unimportant in this *Strasser v. City of Nashville et al.* case. This particular insistence of Mr. and Mrs. Strasser is, therefore, overruled without discussion of this law question other than to refer to the decision in the Catlett case.

Mr. and Mrs. Strasser own in fee simple a farm of 230 acres in Davidson County in the neighborhood of the Nashville Municipal Airport. In the Circuit Court condemnation proceedings the Commissioner of Highways is seeking the acquisition of 80.29 acres of this farm for use in the construction of the link between Nashville and Knoxville of that system of super, connecting, interstate highways which the Federal Government, in cooperation with the States, is in process of constructing.

Nashville, in an entirely unrelated action, is extending, and expanding its Municipal Airport. As a part of such project, it has under construction a new runway 150 feet wide and 8,000 feet long for use especially by large jet airplanes. No part of this runway touches the property of Mr. and Mrs. Strasser, but it does end some 200 or 300 feet from the boundary line of their farm.

In getting off the ground from this runway into the air there must be made available to these planes that which is called a "clear zone"; that is, as the Court under-

stands it, absence of obstructions above the ground with which these planes in acquiring height, etc. might come in contact, and possibly guiding lights, etc. This clear zone is to be a specified width at its beginning and fanning out gradually to a much greater width for a distance of some 2,000 feet or more over the lands over which they are flying and in the direction towards which these planes, in their takeoffs, are being piloted. It is assumed in this opinion that an appropriate easement must be obtained from the owner of the lands over which these planes fly in the required clear zone as a prerequisite for its use as a clear zone.

To borrow the language of appellants' brief, when this runway is completed "it is obvious to a prospective purchaser (of Strasser farm, or portions thereof) that the barrel of the runway is pointed toward Complainants' land, and that the shotgun charge of the clear zone will erupt over it".

Pursuant to the situation stated, Nashville has contracted with the administrator of the Federal Civil Aeronautics entity to acquire this clear zone over the farm of the Strassers. The space over the farm required for the proposed clear zone is, to a great extent, over the very 80.29 acres which the State is to acquire in fee simple in the condemnation proceedings.

Nashville has started no proceedings to acquire an easement over any lands of Mr. and Mrs. Strasser for this clear zone. Whether it will ever do so can only be determined by what the future may bring forth. But the State wants to proceed with its eminent domain proceedings in the Circuit Court to acquire in fee simple the 80.29 acres now admitted by it to be owned in fee simple

by the Strassers, and for which fee simple title the State proposes to pay the Strassers the amount to which the Strassers are adjudged entitled in the Circuit Court eminent domain proceedings.

The situation with which Mr. and Mrs. Strasser say that they thus find themselves confronted is, in their words, this:

> "The takings overlap in that the proposed highway and the proposed clear zone cover to a great extent the same land. There is thus an overlapping taking by two agencies at one and the same time, one of such agencies proceeding in such manner as to obtain the advantage of the easement taken by the other agency, but depriving the complainants of their right of action against the other agency."

It is appropriate to note here that the foregoing statement is factually erroneous in so far as it means to say that there has been any "taking", or effort in that respect, by Nashville of any clear zone over the Strasser farm.

The complaint made by Mr. and Mrs. Strasser is that the taking in fee simple of the 80.29 acres of land by the State will bring it about that they cannot claim damages against the City for the procuring of an easement for a clear zone over that acreage. In this connection, the allegation of the Strassers' bill is that when the State sent out its appraisers to ascertain the value of the 80.29 acres these appraisers considered these acres "as being incumbered by an approach zone or clear zone for the runway and, therefore, as being unsuitable for subdivision purposes"; and that these appraisers valued the land as if the easement for a clear zone already

existed over this 80.29 acres; hence, estimated a very substantial less amount for damages, actual and incidental.

The Strassers say that this farm has become very desirable for transformation into a high-class residential subdivision, and that this much increased value brought about by the forward surge of progress has in turn been much decreased in value, aside from the chopping up of the farm, either by the existence of the runway which the City of Nashville by reason of another facet of this same march of progress is constructing on property other than that of the Strassers, but close to their farm, or by the clear zone over the 80.29 acres contemplated for use by planes in taking to the air from that runway.

The Strassers say that if, in the Circuit Court condemnation case, they take the position that the runway has not affected the value of their property, they hazard the risk that such position may be found against them. Then, in a separate suit against Nashville they may be estopped, they say, from insisting that the building of the runway has damaged their property; moreover, that the acquisition of the fee-simple title to this 80.29 acres by the State will disentitle them to any compensation from the City by way of the use of the above surface space over this 80.29 acres as a clear zone. It is upon this theory that it is insisted in behalf of Mr. and Mrs. Strasser that they have no adequate remedy at law.

█ The damages, actual and incidental, to be fixed for the taking in fee simple by the State of this 80.29 acres is, of course, to be ascertained by taking into consideration all the factors then existing with reference to the Strasser farm which enter into the question of the dam-

age, actual and incidental, resulting from the taking in fee simple by the State of a portion of that farm.

■ Of course, the State, upon acquiring fee-simple title, may make the land acquired available to any legal use permissible to any owner in fee simple of a given tract of land when such use is not in conflict with its acquisition primarily for construction of a public highway.

■■ And it is for the Court and jury, in the condemnation proceedings, and after ascertaining all those factors, to determine the amount of damages, actual and incidental, considered in the light of the existence of such factors, to which the Strassers will be entitled for the taking in fee simple of a portion of their farm. But the existence of those factors constitutes no legal or equitable reason, in so far as this Court can conceive, for interference by Chancery with the Circuit Court proceedings instituted for the acquisition by the State of the fee-simple title to such portion of this farm. Any remedy which Chancery may be able to afford the Strassers is equally available to them in the Circuit Court condemnation proceedings.

As observed by the Chancellor, if the construction of this runway by the City of Nashville is an act for which the City may be made to respond in damages to the Strassers, then the Law Court is open to the Strassers for the procuring of that relief. By the same token, if the use by the City of the clear zone in question after this 80.29 acres is acquired by the State is a use for which the City is liable in so far as such use damages the remaining property of the Strassers, then the Law Court is likewise open to the Strassers at that time for the

procuring of that relief. But each of the two actions is entirely unrelated in any manner to the proceedings instituted in the Law Court by the State for the acquisition of this 80.29 acres. Neither may be made a part of the State's condemnation proceedings.

For the reasons stated, the decree of the Chancellor is in all respects affirmed. The costs of the appeal will be adjudged against the Strassers.